**No. 26-10265**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

MICHAEL CODY TORRES,
*Plaintiff - Appellant*,

v.

CITY OF FORT WORTH; ROBERT ALLDREDGE, In His Official Capacity; RAFAEL SALAZAR; STEVEN RODRIGUEZ; LAWRENCE WOLFE; DUTCH ROVELL; CORPORAL COX; FERNANDO GALVAN; JASON KIM; and SERGEANT TYLER

*Defendants - Appellees*.

Appeal From The United States District Court
Northern District Of Texas

**APPELLANT'S BRIEF**

ROBERT SMEAD HOGAN
**HOGAN LAW FIRM, P.C.**
Tex. Bar No. 00796767
6215 98th Street
Lubbock, TX 79424
(806) 771-7900
(806) 771-7925 Fax

ATTORNEY FOR APPELLANT

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to 5th CIR. RULES 28.2.1 and 35.2.1, the undersigned counsel of record certifies that the following listed non-governmental person(s) has an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| **Appellant:** | **Counsel for Appellant:** |
|---|---|
| Michael Cody Torres | Robert Hogan, HOGAN LAW FIRM, PC, Lubbock Texas; James Roberts, PALMER & PERLSTEIN, Addison, Texas; Scott H Palmer, SCOTT H PALMER, PC, Addison, Texas |

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| City of Forth Worth | Destiney-Ariel Hicks, Laetitia Coleman Brown, FORT WORTH CITY ATTORNEY'S OFFICE, Fort Worth, Texas |
| Robert Alldredge | |
| Rafael Salazar | Kenneth E East, LAW OFFICE OF KENNETH E EAST, Fort Worth, Texas |
| Steven Rodriguez | |
| Lawrence Wolfe | |
| Jason Kim | |
| Dutch Rovell | James T Jeffrey Jr., Scott Kidd Jeffrey, LAW OFFICES OF JIM JEFFREY, Arlington, Texas |
| Corporal Cox | |
| Fernando Galvan | |
| Sergeant Tyler | |

*s/Robert Smead Hogan*
Robert Smead Hogan
Attorney For Appellant

July 2, 2026
Date

## STATEMENT REGARDING ORAL ARGUMENT

This appeal arises from Appellant's challenge to the constitutionality of a City of Fort Worth ordinance that criminalizes protected speech in public places. Given the important constitutional issues at stake, Appellant requests oral argument of fifteen minutes.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .............................................. i

STATEMENT REQUESTING ORAL ARGUMENT ..................................... ii

TABLE OF CONTENTS ......................................................................... iii

TABLE OF AUTHORITIES ................................................................... vii

INTRODUCTION ..................................................................................... 1

JURISDICTIONAL STATEMENT ........................................................... 3

STATEMENT OF ISSUES PRESENTED FOR REVIEW ............................. 4

STATEMENT OF THE CASE ..................................................................... 5

SUMMARY OF THE ARGUMENT ........................................................ 13

STANDARD OF REVIEW ...................................................................... 14

ARGUMENT .......................................................................................... 15

**I. THE ACTIONS OF THE DEFENDANT OFFICERS VIOLATED TORRES'S CONSTITUTIONAL RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND THOSE RIGHTS ARE CLEARLY ESTABLISHED** ... 15

A. THE FIRST AMENDMENT PROTECTS THE RIGHT OF MICHAEL TORRES TO PREACH THE GOSPEL IN A PUBLIC PLACE ....................... 15

*1. Torres's Religious Speech is Constitutionally Protected* ....... 15

*2. Sidewalks are Traditional Public Fora during Public Events* ..................................................................... 16

## TABLE OF CONTENTS (contd.)


B. GOVERNMENT RESTRICTION OF SPEECH IN A PUBLIC PLACE MUST SATISFY THE REQUIREMENTS OF STRICT SCRUTINY ............. 17

C. THE OFFICERS VIOLATED APPELLANT'S RIGHTS BY ARRESTING AND CITING HIM ............................................................ 18

**II. THE COURT INCORRECTLY DISMISSED TORRES'S CLAIMS UNDER THE FIRST AMENDMENT, FOURTH AMENDMENT, AND FOURTEENTH AMENDMENT AS APPLIED TO PLAINTIFF, BECAUSE THE COURT MISCONSTRUED TORRES'S COMPLAINT** ............................ 19

A. TORRES ALLEGED CONSTITUTIONAL VIOLATIONS UNDER THE FIRST AND FOURTH AMENDMENT THROUGH THE FOURTEENTH AMENDMENT ............................................................................ 20

1. *The noise statute was unlawfully applied against Torres* ........... 22

2. *Torres's complaints under the Fourth and Fourteenth Amendment are not related primarily to confiscation of preaching equipment* ................................................................ 24

B. THE INDIVIDUAL OFFICER DEFENDANTS ARE NOT ENTITLED TO PROTECTION OF QUALIFIED IMMUNITY ............................................. 25

*1. The Qualified Immunity Standard* ............................................... 25

*2. Officers are not entitled to qualified immunity for the warrantless arrests of Torres on August 26, 2023 and August 3, 2024* ........................................................................ 26

*3. Officers are not entitled to qualified immunity for the unlawful restraint of Torres's First Amendment rights.* ............................ 28

**III. TORRES PROPERLY CHALLENGED THE CONSTITUTIONALITY OF THE FORT WORTH ORDINANCE ON ITS FACE** ...................................... 30

**TABLE OF CONTENTS (contd.)**

A. THE CITY OF FORT WORTH, THROUGH ITS SOUND ORDINANCE, IMPOSED A CONTENT-BASED HECKLER'S VETO ON TORRES'S PROTECTED RELIGIOUS EXPRESSION ........ 30

B. EVEN IF CONTENT-NEUTRAL, FORT WORTH'S INFRINGEMENT ON TORRES'S SPEECH IS NOT A REASONABLE TIME, PLACE, AND MANNER RESTRICTION. ........ 34

1. *The statute is not narrowly tailored to meet a significant government interest* ........ 34

2. *The statute's restriction leaves no viable alternatives for the message* ........ 35

C. THE SOUND ORDINANCE VIOLATES DUE PROCESS, AND IS UNCONSTITUTIONALLY VAGUE. ........ 36

1. *Failing to distinguish between volume and content causes vagueness* ........ 37

2. *Lack of a requisite mental state leads to vagueness* ........ 38

3. *The District Court's Reliance Upon Munn is Misplaced* ........ 40

**IV. THE ACTIONS AGAINST APPELLANT ARE PART OF A LARGER PATTERN OF SYSTEMATIC CONSTITUTIONAL DEPRIVATIONS ON THE PART OF THE CITY OF FORT WORTH, THAT SUPPORTS LIABILITY UNDER *MONELL*** ........ 43

A. THE *MONELL* STANDARD ........ 43

B. THE DISTRICT COURT ERRED IN DISMISSING TORRES'S *MONELL* CLAIMS ........ 45

1. *Constitutional violations can be attributed to the City* ........ 45

2. *The City is liable under Monell for inadequacy of training* ... 45

## TABLE OF CONTENTS (contd.)


3. *A pattern or practice of constitutional violations supports liability of the City under Monell* .......... 47

**V. THE DISTRICT COURT FAILED TO CONSIDER TORRES'S REMAINING CLAIMS** .......... 52

A. THE COURT ERRED IN SUMMARILY DISMISSING CLAIMS FOR VIOLATION OF ARTICLE I, § 8 OF THE TEXAS CONSTITUTION. .......... 52

B. THE COURT ERRED IN SUMMARILY DISMISSING CLAIMS FOR VIOLATION OF 42 U.S.C. § 1985 .......... 53

**VI. THE DISTRICT ERRED IN FAILING TO GRANT LEAVE TO AMEND THE COMPLAINT** .......... 55

CONCLUSION .......... 56

SIGNATURE BLOCK .......... 57

CERTIFICATE OF SERVICE .......... 57

CERTIFICATE OF COMPLIANCE .......... 58

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Ashcroft v. al-Kidd*
563 U.S. 731 (2011)....................25

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)....................14, 20

*Baker v. Llano County*
746 F. Supp. 3d 429 (W.D. Tex.2024)....................54

*Bart v. Telford*
677 F.2d 622 (7th Cir.1982)....................29

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*
520 U.S. 397 (1997)....................45

*Bd. of Educ. of Westside Cmty. Sch. v. Mergens ex rel. Mergens*
496 U.S. 226 (1990)....................15

*Beaumont v. Bouillion*
896 S.W.2d 143 (Tex.1995)....................52

*Behrens v. Pelletier*
516 U.S. 299 (1996)....................29

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007).................... 14, 19-20

*Benningfield v. City of Houston*
157 F.3d 369 (5th Cir.1998)....................53

*Bible Believers v. Wayne County*
805 F.3d 228 (6th Cir. 2015) (*en banc*) ....................31–33

*Bloch v. Ribar*
156 F.3d 673 (6th Cir. 1998)....................29

**TABLE OF AUTHORITIES** (contd.)

*Burge v. St. Tammany Parish*
336 F.3d 363 (5th Cir.2003)....................50

*Cantwell v. State of Connecticut*
310 U.S. 296 (1940)....................15

*Capitol Square Review & Advisory Bd. v. Pinette*
515 U.S. 753 (1995)....................15–16

*City of Lakewood v. Plain Dealer Publ'g Co.*
486 U.S. 750 (1988)....................36

*Clary v. City of Cape Girardeau*
165 F. Supp. 3d 808 (E.D. Mo.2016)....................18–19

*Club Retro, L.L.C. v. Hilton*
568 F.3d 181 (5th Cir.2009)....................24

*Coates v. City of Cincinnati*
402 U.S. 611 (1971)....................41

*Connally v. General Construction Co.*
269 U.S. 385 (1926)....................36

*Connick v. Thompson*
563 U.S. 51 (2011)....................50

*Cooper v. City of LaPorte Police Dep't*
608 F. App'x 195 (5th Cir.2015)....................26

*Cox v. Louisiana*
379 U.S. 536 (1965)....................17

*Crostley v. Lamar County*
717 F.3d 410 (5th Cir. 2013)....................26

*Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't*
533 F.3d 780 (9th Cir.2008)....................31

**TABLE OF AUTHORITIES (contd.)**

*Davidson v. City of Stafford*
848 F.3d 384 (5th Cir.2017)....................27, 47, 49

*Democracy Coalition v. City of Austin*
141 S.W.3d 282 (Tex. App.—Austin 2004, no pet.)....................53

*Dupres v. City of Newport*
978 F. Supp. 429 (D.R.I.1997)....................38

*Dussouy v. Gulf Coast Inv. Corp.*
660 F.2d 594 (5th Cir.1981)....................56

*Edionwe v. Bailey*
860 F.3d 287 (5th Cir.2017)....................14

*Edwards v. City of Balch Springs*
70 F.4th 302 (5th Cir.2023)....................47

*Edwards v. South Carolina*
372 U.S. 229 (1963)....................31

*Eitel v. Holland*
787 F.2d 995 (5th Cir.1986)....................55

*Fairchild v. Liberty Indep. Sch. Dist.*
597 F.3d 747 (5th Cir.2010)....................17

*Forsyth County v. Nationalist Movement*
505 U.S. 123 (1992)....................30

*Frasier v. Yanes*
9 S.W.3d 422 (Tex. App.—Austin 1999, no pet.)....................53

*Frisby v. Schultz*
487 U.S. 474 (1988)....................17, 21

*Garza v. City of Donna*
922 F.3d 626 (5th Cir.2019)....................44

**TABLE OF AUTHORITIES** (contd.)

*Gitlow v. New York*
268 U.S. 652 (1925) ........ 15, 20

*Grayned v. City of Rockford*
408 U.S. 104 (1972) ........ 36–37

*Griffin v. Breckenridge*
403 U.S. 88 (1971) ........ 54

*Groden v. City of Dallas*
826 F.3d 280 (5th Cir.2016) ........ 44

*Grossman v. City of Portland*
33 F.3d 1200 (9th Cir.1994) ........ 34

*Halbert v. City of Sherman*
33 F.3d 526 (5th Cir.1994) ........ 55

*Hartley v. Wilfert*
918 F. Supp. 2d 45 (D.D.C.2013) ........ 19

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*
452 U.S. 640 (1981) ........ 15–16, 22, 35

*Hershey v. City of Bossier City*
156 F.4th 555 (5th Cir.2025) ........ 46

*Hill v. City of Houston*
991 F. Supp. 847 (S.D. Tex.1998) ........ 54

*Houston Chronicle Publ'g Co. v. City of League City*
488 F.3d 613 (5th Cir.2007) ........ 18, 34

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, Inc.*
515 U.S. 557 (1995) ........ 22

*Iranian Muslim Org. v. City of San Antonio*
615 S.W.2d 202 (Tex.1981) ........ 27

**TABLE OF AUTHORITIES** (contd.)

*Joseph v. Allen*
712 F.3d 1222 (8th Cir.2013).........19

*Keenan v. Tejeda*
290 F.3d 252 (5th Cir.2002).........26–29

*Kilpatrick v. King*
499 F.3d 759 (8th Cir.2007).........18

*Knowles v. City of Waco*
462 F.3d 430 (5th Cir.2006).........18

*Kramer v. Price*,
712 F.2d 174 (5th Cir.1983)
vacated on reh'g *en banc*, 723 F.2d 1164 (5th Cir. 1984).........41

*Lamb's Chapel v. Center Moriches Union Free Sch. Dist.*
508 U.S. 384 (1993).........15

*Lyn-Lea Travel Corp. v. American Airlines*
283 F.3d 282 (5th Cir.2002).........55

*McCullen v. Coakley*
573 U.S. 464 (2014).........17

*McLellan v. Mississippi Power & Light Co.*
545 F.2d 919 (5th Cir.1977).........54

*Messerschmidt v. Millender*
565 U.S. 535 (2012).........25

*Michigan v. DeFillippo*
443 U.S. 31 (1979).........26

*Monell v. New York City Dep't of Soc. Servs.*
436 U.S. 658 (1978)......... *passim*

**TABLE OF AUTHORITIES** (contd.)

*Morin v. Caire*
77 F.3d 116 (5th Cir.1996)....................14

*Munn v. City of Ocean Springs*
763 F.3d 437 (5th Cir.2014)....................40–43, n5

*Nestor Colon Medina & Sucesores, Inc. v. Custodio*
964 F.2d 32 (1st Cir.1992)....................29

*North Miss. Communications, Inc. v. Jones*
951 F.2d 652 (5th Cir.1992)....................29

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*
460 U.S. 37 (1983)....................16–18

*Peterson v. Kopp*
754 F.3d 594 (8th Cir.2014)....................19

*Quintanilla v. Texas Television, Inc.*
139 F.3d 494 (5th Cir.1998)....................55

*R.A.V. v. City of St. Paul*
505 U.S. 377 (1992)....................32

*Reed v. Town of Gilbert*
576 U.S. 155 (2015)....................18, 30

*Reno v. ACLU*
521 U.S. 844 (1997)....................33

*Rolf v. City of San Antonio*
77 F.3d 823 (5th Cir.1996)....................27

*Rosenberger v. Rector & Visitors of Univ. of Va.*
515 U.S. 819 (1995)....................30, 32

*Saia v. New York*
334 U.S. 558 (1948)....................41

## TABLE OF AUTHORITIES (contd.)

*Saieg v. City of Dearborn*
641 F.3d 727 (6th Cir.2011)....................................35

*Snyder v. Phelps*
562 U.S. 443 (2011)....................................22

*Sonnier v. State Farm Mut. Auto. Ins. Co.*
509 F.3d 673 (5th Cir.2007)....................................20

*Terminiello v. City of Chicago*
337 U.S. 1 (1949)....................................39

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*
659 S.W.3d 424 (Tex.2023)....................................52

*Texas Health Care Info. Council v. Seton Health Plan, Inc.*
94 S.W.3d 841 (Tex. App.—Austin 2002, no pet.) ....................................53

*Texas v. Johnson*
491 U.S. 397 (1989)....................................22

*Thompson ex rel. Neveah T. Martinez*
789 F. Supp. 3d 529 (W.D.Tex.2025).................................... 43-44

*Turner v.Lieutenant Driver*
848 F.3d 678 (5th Cir.2017)....................................25

*United States v. Grace*
461 U.S. 171 (1983)....................................35

*United States v. Williams*
553 U.S. 285 (2008)....................................n5

*Univ. Comm. to End the War in Viet Nam v. Gunn*
289 F. Supp. 469 (W.D. Tex.1968)....................................39

*Valle v. City of Houston*
613 F.3d 536 (5th Cir.2010)....................................44

**TABLE OF AUTHORITIES (contd.)**

*Ward v. Rock Against Racism*
491 U.S. 781 (1989) .......... 18, 35

*Watsky v. Williamson County*
2024 WL 3433705 (W.D. Tex. July 14, 2024) .......... 54

*Webster v. City of Houston*
735 F.2d 838 (5th Cir.1984) (en banc) .......... 50

*Weinberg v. City of Chicago*
310 F.3d 1029 (7th Cir.2002)
*cert. denied*, 540 U.S. 817 (2003) .......... 35

*Widmar v. Vincent*
454 U.S. 263 (1981) .......... 17

*Williams v. City of Denton*
2019 WL 438403 (E.D. Tex. Jan. 10, 2019) .......... 56

*World Wide Street Preachers Fellowship v. Town of Columbia*
591 F.3d 747 (5th Cir.2009) .......... 19, 43

**Constitutional Provisions**

U.S. CONST. amend. I .......... *passim*

TEX. CONST. art. I, § 8 .......... 51–53

**Statutes and Ordinances**

28 U.S.C. § 1291 .......... 3

28 U.S.C. § 1294(1) .......... 3

28 U.S.C. § 1343 .......... 3

28 U.S.C. § 2201 .......... 3

## TABLE OF AUTHORITIES (contd.)

28 U.S.C. § 2202 ....................................................................................3

42 U.S.C. § 1983 ....................................................................................3

42 U.S.C. § 1985(3) ..........................................................................3, 54, 55

42 U.S.C. § 1988 ....................................................................................3

TEX. PENAL CODE § 42.01 ..........................................................................38

TEX. PENAL CODE § 42.04 ......................................................................38–39

Fort Worth, Tex., Code of Ordinances ch. 23, § 23-8............................7, 21, 30, 37

Fort Worth, Tex., Code of Ordinances § 1-6 ...................................................37

**Rules**

FED. R. APP. P. 32(a)(5)...........................................................................57

FED. R. APP. P.. 32(a)(6)...........................................................................57

FED. R. APP. P.. 32(a)(7)(B) .....................................................................57

FED. R. CIV. P. 12(b)(6) .......................................................................*passim*

FED. R. CIV. P. 15(a)...............................................................................55

5th Cir. R. 28.2.1 ....................................................................................... i

5th Cir. R. 35.2.1 ....................................................................................... i

**Other Authorities**

George A. Spater, Noise and the Law
63 MICH. L REV. 8 (1965) .......................................................................21

## INTRODUCTION

Appellant is an outdoor preacher, whose practice of his faith compels him to bring the Gospel to the people, just as Jonah did in the Old Testament, and Paul, Barnabas, Timothy, and countless others have since. On August 26, 2023, Torres sought to evangelize to people in attendance at the Fort Worth Stockyards. He read from the Bible aloud, and preached about the love of Christ. However, the scriptural message was poorly received by some individuals in the crowd, who called on local Fort Worth police officers to shut him down because they were offended. Fort Worth Police Officers arrived and stated that "if someone is offended and complains, we must issue a citation." They issued Torres a citation, and instantered that citation, arresting him and leading him to jail in handcuffs.

Four months later, Torres went to preach along a sidewalk on East Exchange Avenue, near the Fort Worth Coliseum. Officers arrived and again threatened to arrest Torres, motivating him to discontinue his preaching. Again, in April and May of 2024, on three additional occasions, Fort Worth Police Officers silenced Torres as a means for appeasing complainants.

Fort Worth applied a heckler's veto against Torres on each of these occasions, curtailing his speech and arresting him to appease those offended by his speech. These police actions were not random, but a product of city policy. Wanting to go back to public ways in the city and share his Christian beliefs at public events, Torres

brought the instant cause of action to challenge this policy, naming the City of Fort Worth and police officers who applied this policy (collectively referred to as "Fort Worth" or "City") as defendants.

## JURISDICTIONAL STATEMENT

Plaintiff – Appellant Michael Cody Torres (Torres) brought claims against Defendant – Appellant City of Fort Worth, Chief Robert Alldredge (in his official capacity) and affiliated individual officer defendants, claiming violations of free speech, free exercise of religion, and due process under 42 U.S.C. §§ 1983, 1985 and 1988. The district court had jurisdiction under 28 U.S.C. §§ 2201, 2202 and 1343.

This Court has jurisdiction over Appellant's timely appeal from the district court's final judgment of dismissal pursuant to 28 U.S.C. §§ 1291 and 1294(1).

The district court entered an Order on February 27, 2026, granting the Defendants' motion(s) to dismiss under FED. R. CIV. P. 12(b)(6), and denying Torres's request for injunctive relief. (ROA 405) From this Order, Torres filed a timely notice of appeal on March 23, 2026. (ROA 406 – 407).

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**Issue 1:** Does a city policy permitting officers to remove a speaker engaging in First Amendment protected activity based merely on a complainant's statement that they were "offended" constitute a content-based heckler's veto?

**Issue 2:** May police officers cite and arrest an individual for preaching a religious message in a public place based on subjective complaints made by third persons?

**Issue 3:** Does city enforcement of a noise ordinance and a "time, place and manner" policy to criminalize protected speech in a public forum provide fair notice of sanction?

**Issue 4:** Is a noise ordinance which prohibits "offensive" sound constitutional without acknowledging an exception for First Amendment protected activity or requiring a content-neutral basis for enforcement?

**Issue 5:** Do numerous instances of hostility toward street preachers by City of Fort Worth police officers constitute a "pattern or policy" supporting liability against the City under *Monell*?

**Issue 6:** Does the prohibition on recovery of damages for violation of the Texas Constitution require dismissal of claims for injunctive or declaratory relief?

## STATEMENT OF THE CASE

### *Torres Wants to Share his Christian Faith in Public Places*

Michael Torres is a devout Christian and shares the Good News of the Christian Gospels through evangelization efforts with the support of his congregation: By The Word Baptist Church. (ROA 12) Informed by his faith, Torres believes that each Christian has an obligation to go forth and preach the Gospel. (ROA 12) Torres's beliefs and convictions about the truth of Christianity and the message of the Gospels compel him to share his views with others, specifically, in public areas like the Fort Worth Stockyards, where he can reach large numbers of people who may not have been evangelized. (ROA 12–13).

### *The Fort Worth Stockyards is a Traditionally Public Forum.*

Fort Worth Stockyards is a historic district located in Fort Worth, Texas, United States, north of the central business district. (ROA 12). The Fort Worth Stockyards celebrates Fort Worth's long tradition as a part of the cattle industry and was listed on the National Register as a historical district in 1976. (ROA 13). The Stockyards includes entertainment and shopping venues that capitalize on the "Cowtown" image of Fort Worth. (ROA 13). Many bars and nightclubs (including Billy Bob's Texas) are located in the vicinity, and the area has a Western motif. (ROA 13). The area boasts an opry and weekend rodeos take place at Cowtown Coliseum. (ROA 13). Volunteers still reenact cattle drives through the Stockyards (ROA 13).

Weather permitting, drives continue to be held twice daily except on certain holidays. (ROA 13).

***Torres's Ministry of Evangelization at the Stockyards.***

By The Word Baptist Church, located in Azle, Texas, established Proclaiming Christ Ministries, which, according to its Facebook® page, "exists to proclaim the Gospel of the Lord Jesus Christ through open air preaching and evangelism." (ROA 13). Through Proclaiming Christ Ministries, Torres and others go into public fora, where large numbers of people gather, in order to spread their religious message, distribute literature, engage in public prayer and recitation of scripture, hoping to reach out to those who are lost or unfamiliar with the Christian message. (ROA 13).

Torres began his preaching ministry in February 2019. Since 2021, joining with Proclaiming Christ, Torres would go to the Stockyards during a busy traffic time, select a public location, open his bible and begin preaching. (ROA 13). Sometimes he would carry a wooden box that he could stand on, and sometimes he would bring a small amplifier to help his voice by heard by guests. (ROA13–14). Sometimes multiple individuals would accompany Torres to take turns preaching and passing out literature. (ROA 14). The preachers welcomed members of the public to engage in discussions when they wanted to, and often talked with people that stopped to pray with them, answer questions or counsel them. (ROA 14).

### *The Fort Worth Noise Ordinance*

The City of Fort Worth Code of Ordinances contains Chapter 23 Sec. 23-8, which regulates noise disturbances ("Noise Ordinance"). (ROA 14). The Noise Ordinance states in part:

> (d) Noise prohibited.
>
> (1) In addition to the other noise restrictions in this section, no person shall make, cause, suffer, allow or permit unreasonable noise in such a manner, or with such volume, intensity or duration, so as to disturb a reasonable person of ordinary sensibilities. A decibel level shall not be required for the enforcement of this subsection.
>
> ***
>
> (g) *Penalties.*
>
> (1)A person commits an offense if the person makes noise in violation of this section.
> (2) An offense under this section is punishable by a fine of not more than $500.

Section 23-8 further defines the term "unreasonable noise" as follows (ROA 15):

> ***UNREASONABLE NOISE***
>
> a. Any unreasonably loud, disturbing and unnecessary noise which causes material distress, discomfort or injury to persons of ordinary sensibilities in the immediate vicinity thereof; or
>
> b. Any noise of such character, intensity and continued duration, which substantially interferes with the comfortable enjoyment of private homes by persons of ordinary sensibilities.

***Fort Worth Police Officers Restrain Torres's Speech.***

On June 18, 2022, when Michael Torres was using amplification in a public city park to communicate his message to those in attendance, Fort Worth Police Officer Alfaro threatened Torres with citation and arrest unless he discontinued use of sound amplification and ultimately issued Torres a citation. (ROA 16).

A few days later, on June 25, 2022, Torres was confronted by Officers Holland and Carpenter of the Fort Worth Police Department, who informed him that he could not use a sound amplifier outside a public political gathering. Shortly after Plaintiff began speaking, a directed response unit swept in and seized Torres and his property, arrested him and took him to jail. (ROA 16–17).

Because of this, on January 17, 2023, Plaintiff sued the City of Fort Worth and the Fort Worth police officers involved in these incidents, in a case entitled *Michael Torres v. City of Fort Worth*; Case No. 4:23-cv-00060-O; In the Northern District of Texas, Fort Worth Division. (ROA 17).

On August 26, 2023, encouraged by the settlement that the Fort Worth would respect the constitutional rights of street ministers, Torres went with other members of the Proclaiming Christ Ministries to the Fort Worth Stockyards to preach. (ROA 17–18). They began preaching near the Colosseum. Although Torres, himself, was not preaching, he was approached by Officers Rafael Salazar, Fernando Galvan, and Sgt. Tyler, who informed him that someone had complained that the preaching

offended them. (ROA 17) The officers stated that "If anyone is offended and complains, they must issue a citation," and they cited and arrested Torres. (ROA 18). Plaintiff was placed in handcuffs and paraded to a patrol car, where he was taken to jail. (ROA 18). Plaintiff spent the night in jail for exercising his constitutionally protected rights, before being released the following morning. (ROA 18). The charges were dismissed nine months later, on the morning of trial. (ROA 18)

On December 2, 2023, Torres went to preach along a sidewalk on East Exchange Avenue in front of the colosseum. (ROA 18) Officer Rafael Salazar approached Torres and stated that East Exchange Avenue was private property and that the group could not preach there because they were "disturbing the peace." (ROA 18) Salazar told Torres that he would be ticketed and arrested again if he did not quit preaching. (ROA 18) Under threat of arrest and criminal charges, Torres discontinued his preaching for the night. (ROA 18)

On December 30, 2023, Torres was again approached by Officer Rafael Salazar, Corporal Cox, and Officer Dutch Rovell in the area of the Stockyards. (ROA 18) Officer Salazar told Torres that they were there because someone had complained, and instructed Torres to "shut it down." (ROA 18) Torres tried to engage Officer Salazar in a discussion of the legality of his conduct, but Officer Salazar refused to discuss the matter, accusing Torres and those with him of

engaging in "disorderly conduct." (ROA 18) Once again, under coercive pressure and threat of arrest and prosecution, Torres was forced to discontinue his constitutionally protected expression. (ROA 18)

On April 13, 2024, Torres was again preaching in the Stockyards when police came, including Officer Rafael Salazar, Officer Cantu, and Commander Jason Kim. (ROA 18 –19) The Officers told Torres and those with him that they were not allowed to speak with amplification "if the amplification could be heard over the ambient noise." (ROA 19) The Officers threatened to cite Torres and others if they kept using an amplifier, and refused all attempts to discuss the matter calmly and rationally with Torres or his group. (ROA19) Again, under threats of criminal arrest, Torres and his group were curtailed from preaching. (ROA19)

On April 22, 2024, Torres and others from Proclaiming Christ Ministries were on a public sidewalk in downtown Fort Worth near Sundance Square. (ROA 19) Officers started hassling Torres and told them that they couldn't "have anything touching the ground." (ROA 19) Torres asked about the wagon that they were transporting equipment in, and the Officers agreed that the wagon would be ok. (ROA 19). Torres placed everything in the wagon, including their amplified speaker, and positioned it so that it would not obstruct any foot traffic. (ROA 19) Officers returned soon afterward and claimed that someone had complained so the Officers had to order Torres to "shut it down." (ROA 19) The Officer threatened criminal

charges of criminal trespass on a public street if Torres did not stop. (ROA 19) Again, under threat of criminal sanctions, Torres ceased his constitutionally protected activity and left the area. (ROA 19).

On May 1, 2024, Torres returned to the Stockyards to preach, on the afternoon of the dismissal of the charges in the August 26, 2023 arrest. (ROA 19). As they were preaching in the Stockyards, they were approached by Officers who began hassling them about their preaching. (ROA 19). Torres informed officers about the prior charges having been dismissed in court that morning, and officers initially left. (ROA 19). Officers later returned and asked if the group would turn the speaker volume down a little. Torres complied and the officers left. (ROA 19).

Within a few minutes, other officers approached and told Torres that people had complained and he needed to "pack it up" or he would be receiving a disorderly conduct citation. (ROA 19). When Torres expressed his desire to continue to engage in constitutionally protected activity, Officers Lawrence Wolfe and Steven Rodriguez issued Torres a citation for disorderly conduct. (ROA 20). During the encounter, Officer Wolfe explained that "when someone is offended by something, he has to take action because that is his job." (ROA 20) Once again, the charges were dismissed six months later on the morning of trial. (ROA 20).

On August 3, 2024, Torres returned to the Stockyards to preach, joining others from his group who had already been preaching with a speaker. (ROA 20). Torres

noticed Officer Rafael Salazar sitting nearby in his vehicle, surveilling the group. (ROA 20) When Torres started preparing to preach, Salazar exited his vehicle and stood by it. (ROA 20) Torres began preaching, and immediately was confronted by Salazar and officers Steven Rodriguez and Lawrence Wolfe, who approached, asked Torres for his identification, and began writing a disorderly conduct citation for using voice amplification. (ROA 20) Salazar told Torres that, even though Salazar had just lost a case for another guy for the same thing two weeks prior, he didn't care and would keep going back to court. (ROA 20)

Officer Wolfe told Torres that it wasn't the preaching that was objectionable, but only the speaker, and that he would allow Torres to preach as long as he was not using the speaker. (ROA 20) Hoping to prevent the officers from impeding his attempt to preach, Torres agreed to discontinue using the speaker, and returned it to his car. (ROA 20) A short while later (showing that it really was the content -- not the volume) Wolfe, Salazar and Rodriguez approached and arrested Torres for disorderly conduct by "elevated voice volume." (ROA 20) Torres was taken to jail where he was booked in again, and spent the night in jail before being released. (ROA 20). Again, the charges were dismissed on the morning of trial ten months later.

## SUMMARY OF THE ARGUMENT

The District Court improperly dismissed Torres's action, by attempting to resolve factual issues on the merits of Torres's claim, rather than applying the preliminary legal analysis required by FED. R. CIV. P. 12. Instead, the presence of disputed issues of material fact should have highlighted the merit of Torres's claims, and the need for discovery of evidence and proper legal development of these claims.

It was clearly error for the District Court to grant the Motions to Dismiss appellant's claims, which contained sufficient particularity to survive Rule 12(b)(6), in light of the clearly established legal precedent.

Accordingly, Torres asks this Court to reverse the district court's order of dismissal.

## STANDARD OF REVIEW

To withstand a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir.2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or "a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In reviewing the district court's grant of a motion to dismiss, this Court must accept as true all well-pleaded facts and view those facts in the light most favorable to the plaintiff. *Edionwe*, 860 F.3d at 291. A complaint should be dismissed only when it appears that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir.1996).

Since a motion to dismiss is made prior to discovery, it is based on the pleadings alone, and review of a motion to dismiss essentially turns upon questions of law – not questions of fact. The review considers the basic issue of whether a cause of action is recognized or could be supported based on good-faith arguments for extension of existing law. This is a most basic and conceptual consideration of the law, rather than a weighing of evidentiary matters in a specific case.

## ARGUMENT

### I. THE ACTIONS OF THE DEFENDANT OFFICERS VIOLATED TORRES'S CONSTITUTIONAL RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION, AND THOSE RIGHTS ARE CLEARLY ESTABLISHED.

#### A. THE FIRST AMENDMENT PROTECTS THE RIGHT OF MICHAEL TORRES TO PREACH THE GOSPEL IN A PUBLIC PLACE.

The First Amendment states that "Congress shall make no law … abridging the freedom of speech." U.S. CONST. AMEND. I. The First Amendment applies to the states through the Fourteenth Amendment's due process clause. *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

##### *1. Torres's Religious Speech is Constitutionally Protected*

Appellant's desire to share his Christian beliefs through recitation of scripture, distributing literature, and consensual conversations is constitutionally protected. *See Cantwell v. State of Connecticut*, 310 U.S. 296 (1940). It is clearly established that preaching one's religious views in public is protected by the First Amendment. *Capitol Square Review & Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995); See *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) ("...oral and written dissemination of the Krishnas' religious views and doctrines is protected by the First Amendment."); *Bd. of Educ. of Westside Cmty. Sch. v. Mergens By & Through Mergens*, 496 U.S. 226 (1990); *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384 (1993).

*2. Sidewalks are Traditional Public Fora during Public Events*

The right to use government property for one's private expression depends upon whether the property has by law or tradition been given the status of a public forum . . ..” *Capitol Square Review & Advisory Bd.*, 515 U.S. at 761 (1995). In *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983), the Court identified three types of fora: the traditional public forum, the public forum created by government designation, and the nonpublic forum. “In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed.” At one end of the spectrum are streets and parks which “have immemorially been held in trust for the use of the public, and . . . have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.” *Perry Educ. Ass’n v. Perry Loc. Educators’ Ass’n*, 460 U.S. at 45 (1983).

Torres has a fundamental right to share his views by preaching on public sidewalks in downtown Fort Worth. *See Heffron v. Int’l Soc’y for Krishna Consciousness*, 452 U.S. 640, 647 (1981) (oral and religious expression constitutes protected speech). The sidewalks and areas where Torres preached — in the Stockyards and other public areas of Fort Worth — are undoubtedly areas that

constitute a traditional public forum, occupying a "special position" in the area of free speech. *McCullen v. Coakley*, 573 U.S. 464, 500 (2014).[1]

Torres's desired expression is, without doubt, constitutionally protected, and that protection is clearly established. *Widmar v. Vincent*, 454 U.S. 263, 269 (1981). This protection is sure — it does not fade if someone happens to find the message offensive. *Cox v. Louisiana*, 379 U.S. 536, 551-552 (1965).

### B. Government Restriction of Speech in a Public Place Must Satisfy the Requirements of Strict Scrutiny.

Speech restrictions depend the nature of the forum. *Frisby v. Schultz*, 487 U.S. 474, 479 (1988). This Court has recognized three broad kinds of property for free speech purposes: traditional, designated, and nonpublic fora. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 757–58 (5th Cir.2010).

In traditional public fora, the government's capacity to restrict speech is "sharply circumscribed." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (citation omitted). Any restriction imposed in this forum type must meet three criteria [to pass constitutional muster]: (1) it must be content-neutral; (2) it must be narrowly tailored to serve a significant governmental interest; and (3) it must leave open ample alternative channels for communication of the

---

[1] Neither the Defendant Officers, nor the City of Fort Worth contended that the Fort Worth Stockyards contended that the Fort Worth Stockyards was *anything but* a "public forum," and the district court implicitly acknowledged the nature of these locales.

information. *Houston Chron. Pub. Co. v. City of League City*, 488 F.3d 613, 622 (5th Cir. 2007). If content based, the speech restriction is prone to strict scrutiny, meaning the infringement be "the least restrictive means available to further a compelling government interest" to survive. *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64. (2015). When a regulation is content-neutral, the restriction is examined under intermediate scrutiny to see whether it is "narrowly tailored to serve a significant government interest." *Perry Educ. Ass'n*, 460 U.S. at 45. "If 'a substantial portion of the burden on speech does not serve to advance' the ordinance's stated goals, then the ordinance is not narrowly tailored." *Knowles v. City of Waco*, 462 F.3d 430, 434 (5th Cir.2006) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)).

C. THE OFFICERS VIOLATED APPELLANT'S RIGHTS BY ARRESTING AND CITING HIM.

An officer's decision to cite and arrest a citizen exercising protected speech violates the First Amendment right to free speech and the Fourth Amendment right against unreasonable seizure. *Clary v. City of Cape Girardeau*, 165 F.Supp.3d 808, 825 (E.D. Mo. 2016). "A citizen's right to exercise First Amendment Freedoms 'without facing retaliation from government officials is clearly established.'" *Id.* (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 480-81 (8th Cir. 2010) (quoting *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir 2007))). Further, "it is well established that a warrantless arrest without probable cause violates an individual's

constitutional rights under the Fourth and Fourteenth Amendments. *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013).

As pleaded in the verified complaint, Torres was cited four times, arrested twice, and threatened with arrest numerous times because of his preaching activity. Being arrested for exercising the right to free speech would chill a person of ordinary firmness from exercising that right in the future. *Clary v. City of Cape Girardeau*, at 826 (citing *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir.2014). An actual arrest resulting in a speaker's loss of an opportunity to engage in protected speech clearly violates the First Amendment in the most pristine and classic form. *Hartley v. Wilfert*, 918 F.Supp.2d 45, 52 (DC. Cir.2013). Even the threat of arrest is sufficient to chill speech in violation of the First Amendment. *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 (5th Cir.2009).

The facts as pleaded by the Appellant below demonstrate that the Defendant Officers violated Appellant's rights and were not entitled to protection of Qualified Immunity.

## II. THE COURT INCORRECTLY DISMISSED TORRES'S CLAIMS UNDER THE FIRST AMENDMENT, FOURTH AMENDMENT, AND FOURTEENTH AMENDMENT AS APPLIED TO PLAINTIFF, BECAUSE THE COURT MISCONSTRUED TORRES'S COMPLAINT.

The "plausibility" standard of *Twombly* and *Iqbal* does not require a plaintiff to prove a case by a preponderance of the evidence at the pleading stage. That level

of proof is reserved for trial on the merits, after ample time for discovery. That is the reason that a court reviewing a Rule 12(b)(6) motion must take all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir.2007). Likewise, a plaintiff must only demonstrate a cause of action that is "plausible," i.e., "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In this regard, the *Iqbal* standard is analogous to the "reasonable suspicion" standard for an investigatory stop in criminal law.

Under the standard of *Twombly* and *Iqbal*, a district court must take the pleadings as they are – not recast the pleadings as the court would like them to be and then make conclusions based on its own recast narrative. Yet, this is what the district court seems to have done in this case, claiming that Torres "did not have a constitutional right to preach at a loud volume" (ROA 394), and claiming that Torres Fourth Amendment claims were based on "confiscated preaching equipment." (ROA 394, 396).

### A. TORRES ALLEGED CONSTITUTIONAL VIOLATIONS UNDER THE FIRST AND FOURTH AMENDMENT THROUGH THE FOURTEENTH AMENDMENT.

The First Amendment states that "Congress shall make no law…abridging the freedom of speech." U.S. Const Amend I. The First Amendment applies to the states through the Fourteenth Amendment's due process clause. *Gitlow v. New York*, 268 U.S. 652, 666 (1925). The First Amendment protects religious and political speech

on public sidewalks and streets, "the archetype of a traditional public forum." *Frisby v. Schultz*, 487 U.S. 474, 480 (1988).

Nowhere in the Complaint or in the response to the motions to dismiss does Torres complain that he claims a right to "preach at a loud volume." In fact, that term is inherently misleading, because the concept of a "loud volume" is a highly subjective concept – not an objective concept, and leaves much to the interpretation of the percipient (as discussed below). Such a standard is ripe for misuse and abuse in its application.

The statute in question, under which Torres was cited and arrested, prohibits "unreasonable noise," which it defines alternatively with an objective definition based on decibel levels, but also with a subjective definition as "[a]ny unreasonably loud and unnecessary noise which causes material distress, discomfort or injury to persons of ordinary sensibilities in the immediate vicinity thereof…." CITY OF FORT WORTH NOISE ORDINANCE, § 23-8.

Whether speech is deemed "noise" is a highly subjective matter, because "noise" by definition is sound that is not wanted by those who hear it.[2] A political or

---

[2] George A. Spater, Noise and the Law, 63 MICH. L REV. 8, p. 1374 n. 5(citing Handbook of Noise Control 1-11 (Harris ed. 1957)). "Sound is caused by the exertion of energy (a hand clap for example, or a bow pulled across the strings of a violin) transmitted by pressure waves from the source of the energy to a receiver. In some instances the pressure waves may be inaudible – they may be too weak or, because of their frequency, may be beyond the capacity of the human ear to receive. When audible, these pressure waves are 'sound' and when the sound is unwanted by the receiver, it is 'noise.'"

religious speech might be considered to be "unreasonable noise" based on the hearer's disagreement with the content or dislike for the speaker. Although the court asserted that the First Amendment protects "the right of every citizen to reach the minds of willing listeners" (ROA 394) (citing *Heffron v. Int'l Soc'y for Krishna Consciousness,* 452 U.S. 640 (1981)), the First Amendment likewise protects the right of speech even when the listeners are unwilling and disagree with the speaker. *Snyder v. Phelps*, 562 U.S. 443, 458 (2011). Indeed, "the point of all speech protection ... is to shield just those choices of content that in someone's eyes are misguided, or even hurtful." *Id.*, quoting *Hurley v. Irish–American Gay, Lesbian and Bisexual Group of Boston, Inc.,* 515 U.S. 557, 574 (1995).

*1. The noise statute was unlawfully applied against Torres.*

The district court concluded that the defendant police officers had absolute authority to arrest and cite Torres for noise, without considering the special protection afforded to Torres to be free from content-based regulation of his speech. This right has been clearly established since at least 1989 under *Texas v. Johnson,* 491 U.S. 397, 414 (1989) and was reaffirmed under *Phelps* in 2011.

Whether Torres's arrests and citations were based on the religious content of his speech, or only upon volume alone, is a central issue of this case. The district court disregarded this, merely concluding (without support), that the officers' actions were based on the objective volume alone. However, according to the plausible

allegations of Torres's well-pleaded complaint the officer's actions were based not on the volume, but rather on the content.

a. On August 26, 2023, Torres was arrested by Officers Salazar, Galvan, and Tyler, who stated that someone had complained that the preaching of his group was "offensive." Officers stated that it was department policy that "if anyone is offended and complains, they must issue a citation." (ROA 17–18).

b. On December 2, 2023, Torres was restrained from preaching under threat of arrest for "disorderly conduct" by Officer Salazar in front of the Colosseum. (ROA 18).

c. On December 30, 2023, Officers Salazar, Cox and Rovell restrained Torres from preaching at the Stockyard, under threat of arrest for disturbing the peace if he did not quit preaching. (ROA 18).

d. On April 13, 2024, Officers Salazar, Cantu, and Kim curtailed Torres's preaching at the Stockyards stating that amplification was not permitted if it could be "heard over the ambient noise." (ie., if any preaching was audible). (ROA 18–19).

e. On April 22, 2024, Torres was prevented from preaching and threatened with criminal prosecution by officers because "someone had complained." (ROA 19)

f. On May 1, 2024, Torres was instructed to cease preaching because "people were complaining," and cited by Officers Wolfe and Rodriguez because "someone was offended by something." (ROA 19–20).

g. On August 3, 2024 Officer Wolfe told Torres that he "would be allowed to preach so long as he was not using an amplifier," but then proceeded to arrest Torres after he discontinued using the amplifier to comply with instructions. (ROA 20, 37).

h. During these encounters, Torres recorded with video and audio, illustrating that the volume level of the preaching was appropriate to the environment and not unreasonable. (ROA 35).

i. Torres's activities during these encounters consisted of holding signs and banners, exhibiting video footage and communicating through amplified and unamplified voice. (ROA 32).

j. Torres pleaded that he was not disturbing the peace or quiet of any neighborhood or causing a noise disturbance by his volume, but rather that the enforcement of

the ordinance against him was due to the nature of the content of his speech. (ROA 27).

Torres clearly pleaded that the noise statute was applied against him based on the content of his speech, rather than the volume level alone. This is reinforced by officers' continued action to cite and arrest Torres even when he offered to reduce the volume, and the officers' statements that the volume level would be too loud "if it could be heard." The district court improperly applied a factual analysis, impermissible at Rule 12(b)(6) stage to conclude that volume level was the *only* factor, in dismissing Torres's complaints.

2. *Torres's complaints under the Fourth and Fourteenth Amendment are not related primarily to confiscation of preaching equipment.*

The district court improperly rejected Torres's complaints under the Fourth Amendment through the Fourteenth Amendment, concluding that Torres was complaining about the "confiscation of preaching equipment." (ROA 396).

The Fourth Amendment to the United States Constitution (as applied to the state through the Fourteenth Amendment) protects the right of the people to be free from unlawful seizures. Torres's complaints under the Fourth Amendment stem from the unlawful arrest and seizure of his person on August 26, 2023 and August 3, 2024. (ROA 25, ¶ 69.c & ¶ 94). The Fourth Amendment right to be free from false arrest—arrest without probable cause—was clearly established as of February 6, 2006 and before. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). Torres has

alleged a violation of his Fourth Amendment right to be free from warrantless arrest in the absence of probable cause, and therefore it was improper of the district court to dismiss his claims on this basis. *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th Cir.2017).

## B. THE INDIVIDUAL OFFICER DEFENDANTS ARE NOT ENTITLED TO PROTECTION OF QUALIFIED IMMUNITY.

### *1. The Qualified Immunity Standard*

The district court held that Torres failed to overcome qualified immunity, and the Officers were entitled to qualified immunity because the Fort Worth sound ordinance was not unconstitutional and Torres had no clearly established constitutional right to preach at a loud volume. (ROA 394).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "Qualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Messerschmidt v. Millender*, 565 U.S. 535 (2012).

A warrantless arrest without probable cause violates clearly established law defining an individual's rights under the Fourth Amendment. *See Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir.2013). If an officer has probable cause to

seize an individual, then the "objectives of law enforcement take primacy over the citizen's right to avoid retaliation." *Keenan v. Tejada*, 290 F.3d 252, 261-62 (5th Cir.2002). Probable cause means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Hogan*, 722 F.3d at 731 (quoting *Michigan v. DeFillippo,* 443 U.S. 31, 37 (1979)).

Officers are not entitled to qualified immunity when there was no actual probable cause for the arrest and the officers were objectively unreasonable in believing there was probable cause for the arrest. *Crostley v. Lamar Cty.,* 717 F.3d 410, 422-23 (5th.Cir.2013); *see also Cooper v. City of LaPorte Police Dep't*, 608 Fed.Appx.195-199 (5th Cir.2015).

*2. Officers are not entitled to qualified immunity for the warrantless arrests of Torres on August 26, 2023 and August 3, 2024.*

Torres was arrested on August 26, 2023 by Officers Rafael Salazar, Fernando Galvan, and Sgt. Tyler, placed in handcuffs, and taken to jail where he spent the night. (ROA 17-18). Torres was issued a citation for violation of the noise ordinance. (ROA 18).

On August 3, 2024, Torres was again arrested, on this occasion by Officer Rafael Salazar, Steven Rodriguez and Lawrence Wolfe for "disorderly conduct" by "elevated voice volume." (ROA 20).

At the time of his arrest, Torres was exercising core First Amendment protected activity. In the absence of probable cause, warrantless arrest for similar First Amendment protected activity has been found to be unlawful, and to be unprotected by qualified immunity. *See Davidson v. City of Stafford, Texas*, 848 F.3d 384, 393-94 (5th Cir. 2017) (holding qualified immunity unavailable for arrest of anti-abortion protestor outside abortion clinic without probable cause). Core First Amendment protection has been afforded to speech-related activity including protesting, picketing and demonstrating in public places. *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 205 (Tex.1981)). If no reasonable police officer could have believed that probable cause existed for the law enforcement actions of the officers against Torres, then the retaliation by the officers by arresting him violates the clearly established law of this circuit. *Keenan*, 290 F.3d at 262 (citing *Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir.1996)). Torres has pleaded that his arrest was related to the content of his speech, which demonstrates that the arrest was retaliatory and is not entitled to qualified immunity.[3] To the extent that the officers might argue that the arrest was related to volume only, that would evidence a fact issue, which should be reserved for final determination on the merits – and should not justify dismissal under Rule 12(b)(6).

---

[3] As demonstrated by the officer's repeated statements that people were "offended."

3. *Officers are not entitled to qualified immunity for the unlawful restraint of Torres's First Amendment rights.*

With respect to the larger pattern of conduct of the other Officers, outside of the two arrests, the law is settled that a First Amendment retaliation claim exists when (1) ordinary citizens are engaged in constitutionally protected activity, (2) defendants' actions cause the citizens to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the adverse actions were substantially motivated by the plaintiffs' exercise of constitutionally protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir.2002).

Torres was engaging in First Amendment protected activity — preaching in the stockyards — on August 26, 2023 when he was approached by officers who cited him, arrested him and took him to jail. (ROA 18). Again, on December 2, 2023, Torres was preaching along a sidewalk in a public street on East Exchange Avenue when officers approached him and threatened to arrest him if he continued preaching, causing Torres to discontinue his activity. (ROA 18). On December 23, 2023, Torres was approached by Officer Rafael Salazar, Corporal Cox and Officer Dutch Rovell and instructed to discontinue his preaching. Again, Torres was forced to discontinue his activity. (ROA 18). On April 13, 2024, Torres was preaching in the Stockyards when Officer Rafael Salazar, Officer Cantu, and Commander Jason Kim approached him and curtailed him from preaching. (ROA 18–19). On April 22, 2024, Torres was preaching near Sundance Square, a public area in Fort Worth, when

he was forced to "shut down" his protected activity by threat of criminal sanctions. (ROA 19). On May 1, 2024, Torres was approached by officers Lawrence Wolfe and Steven Rodrigues and cited for disorderly conduct. (ROA 19–20). On August 3, 2024 Torres was confronted by Officers Salazar, Rodriguez and Wolfe, and cited for disorderly conduct and arrested. (ROA 20).

These actions would have been sufficient to a person of ordinary firmness to curtail their exercise of constitutionally protected activity. *Keenan*, at 259. The Fifth Circuit has found that this kind of conduct (arrests and threats of arrests) are sufficiently intimidating to chill the speech of a person of ordinary firmness. *Id.*, citing *North Miss. Comm., Inv. v. Jones*, 951 F.2d 652, 653-54 (5th Cir.1992), *Bloch v. Ribar*, 156 F.3d 673, 681 (6th Cir.1998), and *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 40-41 (1st Cir.1992). Even where the effect on freedom of speech may be small,  [where] there is no justification for harassing people for exercising their constitutional rights, it need not be great in order to be actionable." *Keenan*, at 259 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982)).

Government retaliation for exercise of First Amendment rights can never be objectively reasonable. *Id.* at 261. The existence of probable cause existed is a fact issue which must be resolved by proceedings on the merits, precluding dismissal was not appropriate on that basis. *Id.* at 262. (citing *Behrens v. Pelletier*, 516 U.S. 299, 312–13(1996).

## III. TORRES PROPERLY CHALLENGED THE CONSTITUTIONALITY OF THE FORT WORTH ORDINANCE ON ITS FACE.

Torres also sought declaratory and injunctive relief against the Fort Worth Sound Ordinance § 23-8(d), on the basis that it is unconstitutional on its face and is unconstitutionally vague in its application. (ROA 25, 28). The district court dismissed these claims, stating that Torres had failed to plausibly show that the Fort Worth Sound Ordinance is content-based and failed to plausibly assert that the Sound Ordinance is unconstitutionally vague in its application. (ROA 397). The district court's analysis fell short in both areas, and the court erred in dismissing Torres's action on this basis.

### A. THE CITY OF FORT WORTH, THROUGH ITS SOUND ORDINANCE, IMPOSED A CONTENT-BASED HECKLER'S VETO ON TORRES'S PROTECTED RELIGIOUS EXPRESSION.

"It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819, 831 (1995). A speech restriction is content based if the restriction is linked to the substance of the message expressed. *Reed v. Town of Gilbert, Ariz.* 576 U.S. 155, 163 (2015).

The Fort Worth Sound Ordinance premises speech restriction on hostile reactions to content. "Listeners' reaction to speech is not a content-neutral basis for regulation." *Forsyth Cnty v. Nationalist Movement*, 505 U.S. 123, 134–45. If *listeners* react to speech based on its content and the government then ratifies

that reaction by restricting the speech *in response to listeners' objections,* then the restriction is content-based. *Cf. Ovadal v. City of Madison,* 469 F.3d 625, 630 (7th Cir.2006) (holding that the removal of a protester carrying large signs on busy highway overpass is content-based if his "*message* angered drivers who then reacted and were distracted from the task of driving safely" but content-neutral if his "*presence* on that day and under those driving conditions created a 'spectacle' that led some drivers to be distracted from the task of safely navigating the Beltline"). (emphases in original). When the government restricts speech in response to a negative reaction from a listener, the restriction is necessarily content based, and constitutes a "heckler's veto." *See Edwards v. South Carolina*, 372 U.S. 229, 237 (1963)(heckler's veto occurs when speakers are silenced for "no more than that the opinions which they were peaceably expressing were sufficiently opposed to the views of the majority of the community to attract a crowd and necessitate police protection").

Heckler's vetoes are unconstitutional because they enforce a private party's biases through coercive power of the government. *Ctr. For Bio-Ethical Reform* v. *Los Angeles County Sheriff Dept*., 533 F.3d 780, 787 (9th Cir.2008). Removing or silencing a disfavored speaker can hardly constituted the least restrictive means available to serve a legitimate government purpose, much less a compelling one. *Bible Believers v. Wayne County, Mich.*, 805 F.3d 228, 248 (6th Cir.2015). A

governmental entity can never substantiate an action that stifles select opinions. *Rosenberger*, 515 U.S. at 829. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992)(holding government "has not such authority to license one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules"). More than content, a heckler's veto amount to viewpoint discrimination. *Bible Believers*, 805 F.3d at 248 (explaining how a restriction on viewpoint is '[a]n especially egregious form of content-based discrimination") (citations omitted).

Declining to find a content-based restriction, the district court below pointed to the statute's legitimate purpose in regulating the "volume of speech and not the substance of the speech." Yet it is clear from Torres's pleadings that the enforcement of the statute was based on complaints of people who "were offended" and the police officer's assertion that that is "audible" violates the statute. This happenstance is irrelevant when a heckler's veto exists, as the violation of the statute is adjudged based on restricting speech in response to listeners objections, which is, ipso facto a content-based restriction.

The Sixth Circuit, sitting *en banc*, invalidated a similar heckler's veto in the *Bible Believers* decision. There, a group of evangelical Christian preachers went to an Arabic festival and displayed signs denigrating Islam, an expressive activity that offended many in the predominately Muslim crowd. 805 F.3d at 238. Enraged individuals threw bottles and other debris at the speakers, and, in an attempt to

restore safety and order, the police required the preachers to leave the public streets and sidewalks within the festival under the threat of arrest for disorderly conduct. *Id.* at 239–40. The appellate court held the removal of the speakers was unjustified. *Id.*at 255. Referencing Supreme Court precedent, the appellate court observed that "the First Amendment does not countenance a heckler's veto," *Id.* at 248, holding the county was not free to shut down the speakers as an "expedient alternative" to addressing unruly conduct. *Id.* at 252.

Fort Worth cannot impose a heckler's veto on Torres as an "expedient alternative" under the Sound Ordinance to dealing with the listeners reactions. Forced termination of protected activity can work to silence the speaker. In *Bible Believers*, the police silenced the preachers by requiring them to relocate. 805 F.3d at 253. Fort Worth accomplished this same objective with Torres – they muted his message by making him leave the public ways, depriving him of an audience. This action equates to censorship, which can never be excused based on the alleged "offense" taken by listeners to the speech. *See Reno v. ACLU*, 521 U.S. 844, 880 (1997)(governmental policy that empowers a party offended by speech to censor that speech establishes an invalid heckler's veto).

### B. Even if Content-Neutral, Fort Worth's Infringement on Torres's Speech is Not a Reasonable Time, Place, and Manner Restriction.

Fort Worth contends that the statute is a "time, place, and manner" restriction, but in action, the policy is nothing of the kinds. The City prevents speakers from reaching their desired audience with their message any "time" speech is uttered in a public "place" regardless of the "manner" the speech is communicated in whenever members of the public are "offended."

For a reasonable time, place and manner restriction to be considered so, not only must the restriction be content neutral, it "must also be 'narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication.'" *Hous. Chronicle Pub. Co. v. City of League City, Tex.,* 488 F.3d 613 at 622 (5th Cir.2007) quoting *Perry,* 460 U.S. at 45, 103 S.Ct. 948). "The failure to satisfy any single prong of this test invalidates the requirement." *Grossman v. City of Portland*, 33 F.3d 1200, 1205 (9th Cir. 1994). Fort Worth's policy and the Sound Ordinance fails to meet any of these prongs.

#### *1. The statute is not narrowly tailored to meet a significant government interest.*

The Fort Worth sound ordinance, prohibiting speech in traditional public fora based on the ire of detractors is not a narrowly tailored measure to serve any significant governmental interest. Fort Worth offers public order as the basis for its statute, but while this interest can be plausible in theory, any significance attached

to it wanes with the reality of the statute's enforcement, and results in a restriction which substantially burdens more speech than necessary. *Ward v. Rock Against Racism*, 491 U.S. at 799.

*2. The statute's restriction leaves no viable alternatives for the message*

Fort Worth's statute is further unconstitutional for not leaving Torres with any alternative channels for conveying his message. Independent of other requirements, speech restrictions in traditional public fora must also leave open ample alternative channels of communication to satisfy constitutional scrutiny. *United States v. Grace*, 461 U.S. 171, 177 (1983). "The requirements for a time, place and manner restriction are conjunctive." *Saieg v. City of Dearborn*, 641 F.3d 727, 740 (6th Cir.2011).

The existence of some kind of alternative is not enough; the alternative must be a viable option for effective communication to suffice. *Weinberg v. City of Chicago*, 310 F.3d 1029, 1041 (7th Cir. 2002). "An alternative is not ample if it forecloses a speaker's ability to reach one audience even if it allows the speaker to reach other groups." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1041 (7th Cir.2002) *cert denied*, 540 U.S. 817 (2003) (citation and quotation marks omitted). A speaker has a right to reach his or her desired audience with the desired message. *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 654 (1981). Fort Worth's statute forecloses this opportunity.

Under the Sound Ordinance, the City prohibited Torres from sharing his beliefs by any means on any public ways or streets or in public areas, by virtue of the fact that someone complained about the message, effectively terminating his speech in areas where he could reach members of the public with his message. The fact that the statute lacks protection for privileged First Amendment speech, and places the determination of the offending character on the percipient, predictably leads to a complete prohibition against protected activity. By design, this statute works to divorce the disfavored speaker from the audience, terminating the message.

### C. The Sound Ordinance Violates Due Process, and is Unconstitutionally Vague.

The Due Process Clause of the Fourteenth Amendment requires laws to supply fair notice of prohibited behavior and the associated penalty for failing to comply. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). When persons of ordinary intelligence are left to guess about the meaning of the restriction, or to whom it applies, the law does not supply adequate notice. *Connally v. General Construction Co.,* 269 U.S. 385, 391 (1926). Moreover, due process contemplates enforcement officials having objective standards to prevent arbitrary and discriminatory application of laws. *Grayned*, 408 U.S. at 108. Vague guidelines allow decision-makers to interject their own ideas and biases into the process. *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 757 (1988). And due process concerns are

heightened when a law "abut[s] upon sensitive areas of basic First Amendment freedoms" because lack of clarity invariably chills free speech. *Grayned*, 408 U.S. at 109.

Fort Worth's application of the Sound Ordinance to enforce a heckler's veto on protected speech is an unduly vague restriction. Every time that Torres was cited or arrested, he was participating in an expressive activity that he had every expectation to believe was perfectly legal and constitutionally protected.

Section 23-8 does not require any form of mental state as a basis for the violation. Further, § 1-6 confirms that "Unless otherwise specifically stated in this code, any violation of this code or of any ordinance that is punishable by a fine that does not exceed $500 does not require a culpable mental state, and a culpable mental state is hereby not required to prove any such offense."[4]

*1. Failing to distinguish between volume and content causes vagueness*.

The Sound Ordinance fails to distinguish between the objective volume of the sound and the subjective nature of the content, but bases a violation of the statute only on the experience of the hearer of the sound. A rock concert played at high volume might be enjoyable to a listener, while the same listener might find discomfort in a political speech at far less volume. At the same time, a devotee of

---

[4] The fine for violation of the sound ordinance at $500. See Fort Worth Code of Ordinances § 23-8 (g)(2). https://codelibrary.amlegal.com/codes/ftworth/latest/ftworth_tx/0-0-0-25391.

Mozart might enjoy a robust playing of a concerto, while finding the rock concert discomforting. This vagueness leads to arbitrary enforcement and censorship of disfavored beliefs. A dissatisfied listener can eliminate opposing views in public for a by simply stating that the sound is objectionable. Enforcement of the Sound Ordinance thus wrongly rests on the "subjective opinions of complaining citizens and [] officials." *Dupres v. City of Newport, R.I.*, 978 F.Supp. 429, 434 (D.R.I. 1997)(quotation marks and citation omitted).

*2. Lack of a requisite mental state leads to vagueness.*

The lack of a required mental state on the part of the utterer of the sound, deprives a speaker of reasonable notice of what conduct would violate the statute, so as to allow him to conform his actions to the law. Given even a modest sample size of people, it is reasonable to conclude that *someone* in a group will not like the music, or will disagree with the content of the speech, and *any* sound, or *any* speech will be in violation. So there is no alternative channel for communication available. The only way to ensure that there will be *no violation* is to have *no speech*.

In comparison, § 42.01, TEXAS PENAL CODE contains safeguards, absent in the Fort Worth Sound Ordinance, which are directed to alleviate vagueness and safeguard protected First Amendment Speech. First, § 42.01(a)(5) (the Texas anti-noise ordinance) is predicated upon the intent of the actor, stating that it is an offense when a person "intentionally or knowingly…makes an unreasonable noise…."

Secondly, § 42.04 provides a defense when conduct consists of speech or other expression. "If conduct that would otherwise violation Section 42.01(a)(5)…consists of speech or other communication…the actor must be ordered to move, disperse, or otherwise remedy the violation prior to his arrest if he has not yet intentionally harmed the interests of others which those sections seek to protect." TEX.PEN.CODE § 42.04(a)(irrelevant portions omitted).

Even though the language of § 42.01 is decidedly more narrowly drawn than the Fort Worth Sound Ordinance, the predecessor statute (largely unchanged) has still drawn criticism as being violative of the First Amendment. *Univ. Comm. to End War in Viet Nam v. Gunn*, 289 F. Supp. 469, 474 (W.D. Tex. 1968) probable jurisdiction noted 393 U.S. 819, appeal dismissed, 399 U.S. 383 (1970). In concluding that the statute likely violated First Amendment protections, the *Gunn* Court looked back to *Terminiello v. City of Chicago*, 337 U.S. 1 (1949), which struck a conviction for breach of the peace under a similar statute, saying:

> A function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute * * * is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.

*Id*, 337 U.S. at 4.

*3. The District Court's Reliance Upon Munn is Misplaced.*

The district court held that the Fort Worth Sound ordinance is not unconstitutionally vague, based on this Court's holding in *Munn v. City of Ocean Springs, Miss*., 763 F.3d 437, 442 (5th Cir.2014). But *Munn* is factually distinguishable, and does not conflict with Appellant's argument of invalidity of the Fort Worth ordinance.

In *Munn*, a night club owner who received citations for loud music challenged the constitutionality of the local noise ordinance. *Id.* at 438. Although this Court ultimately upheld the constitutionality of the ordinance, it expressed great hesitation and discomfort with the *way* that the ordinance was enforced. Judge Jolly wrote: "Although we find it disturbing that the ordinance was improperly enforced against Munn, the actual enforcement of the ordinance against Munn is not before us." *Id*.

Two differences distinguish *Munn* and its holding. First, the constitutional challenge in *Munn* was not a First Amendment challenge, but was based on a lesser due process analysis[5], devoid of elements of strict scrutiny. *Id.* at 439. Where First Amendment considerations are involved, however, stricter scrutiny applies. Ordinances that apply to constitutionally protected speech must be scrutinized to

[5] "The Due Process Clause requires that a law provide sufficient guidance such that a man of ordinary intelligence would understand what conduct is being prohibited." *Munn v. City of Ocean Springs, Miss.*, 763 F.3d 437, 439 (5th Cir.2014)(citing United States v. Williams, 553 U.S. 285, 304 (2008)).

make sure that they are narrowly drawn in regulation of time, manner and place, and courts examining such ordinances should "be mindful to keep the freedoms of the First Amendment in a preferred position. *Saia v. People of State of New York*, 334 U.S. 558, 562 (1948).

In the absence of a First Amendment implication, *Munn* turned solely on the lack of specificity of the word "annoy," which Munn argued rendered the statute incapable of being enforced with any degree of uniformity acceptable to the concept of due process, based on *Coates v. City of Cincinnati*, 402 U.S. 611 (1971) (Holding unconstitutionally vague a statute prohibiting a group of three or more people from assembling on a sidewalk and there conducting themselves in a manner annoying to bystanders.) *Id.*, 763 F.3d at 439. *Munn* narrowly upheld the constitutionality of the noise statute, based on its reading of a vacated panel opinion in *Kramer v. Price*, 712 F.2d 174 (5th Cir.1983), *vacated on reh'g en banc*, 723 F.2d 1164 (5th Cir.1984), which seemed to interpret *Coates* to prohibit the use of a subjective standard of annoyance while endorsing an objective standard of annoyance based on a "reasonable person" analysis.

Secondly, despite the district court's observation that the statute in *Munn* was "similarly objective" to the Fort Worth statute (ROA 399), the two statutes are radically distinct. While the Fort Worth Sound Ordinance applies broadly to all "noise," the *Munn* statute contained a facial carve-out for First Amendment protected

speech, applying only to sound which was not deemed to be expressive speech, saving itself from analysis under Strict Scrutiny. The statute read:

> (a) It shall be unlawful for any person to make, cause, or, on premises under his or her control, permit to be made any unreasonable noise or vibration audible or perceptible within the corporate limits or police jurisdiction of the city, including the waters lying within such areas.
>
> (b) For purposes of this section, unreasonable noise or vibration is defined to mean any unreasonably loud, raucous, or jarring sound or vibration which *is not constitutionally protected speech in form and scope of audibility* and which, under the circumstances of time, place, and manner in which it is produced and audible or perceptible, annoys, disturbs, injures, or endangers the comfort, repose, health, peace or safety of a reasonable person of normal sensitivities within the area of the audibility or perceptibility of the noise or vibration without the consent of such person.

*Id.*, (quoting Ocean Springs Ordinance Number 14-2007, Section 15-13.1)(emphasis added).

The explicit First Amendment carve-out language in the statute alleviates the vagueness issue involving content-based "annoyance," regulating only volume. If the Fort Worth ordinance had been similarly worded, perhaps Torres would never have been cited, and there would be no argument about unconstitutionality. This simple difference removes the *Munn* ordinance from heightened scrutiny necessary for statutes that impinge on First Amendment protected speech.

*Munn* expressed great interest in a potential "as applied" challenge, noting that the underlying citations were issued almost entirely on the basis of the repeated noise complaints from anonymous individuals, even though the officer had stated that he did not think the music was unreasonably loud, but noted that the *enforcement*

of the ordinance was not before them. *Id.* at 442. "If actual experience with the ordinance were to demonstrate that it represents a subjective standard, prohibiting a volume that any individual person 'within the area of audibility' happens to find personally 'disturbing,' we would not hesitate to change our judgment accordingly."

## IV. THE ACTIONS AGAINST APPELLANT ARE PART OF A LARGER PATTERN OF SYSTEMATIC CONSTITUTIONAL DEPRIVATIONS ON THE PART OF THE CITY OF FORT WORTH, THAT SUPPORTS LIABILITY UNDER *MONELL*.

The district court erred when it dismissed Appellant's claims under *Monell*, and the Appellant respectfully requests that the dismissal be reversed.

### A. THE *MONELL* STANDARD.

Appellant has brought claims against the City of Fort Worth for liability under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978), specifying circumstances under which municipalities may be held liable for constitutional violations. A failure to train officers to respect constitutional rights, including those protected by the First Amendment, "can without question give rise to this liability. *World Wide Street Preacher's Fellowship v. Town of Columbia*, 591 F.3d at 756.

At the 12(b)(6) stage, a plaintiff need only plausibly plead that there was "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Thompson ex rel. Neveah T. Martinez*, 789 F.Supp.3d at

529 (W.D.Tex.2025)(quoting *Valle v. City of Houston*, 613 F.3d 536 at 541-542 (5th Cir.2010)).

To establish *Monell* liability on a failure to train theory, a plaintiff must allege that (1) the municipality had inadequate training procedures, (2) the municipality was deliberately indifferent in adopting its training policy; and (3) the inadequate training policy directly caused the violation in question. *Id.* Deliberate indifference may be inferred from a pattern of constitutional violations, but can also be shown by a "single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Garza v. City of Donna*, 922 F.3d 626, 637-38 (5th Cir.2019). (internal quotation marks omitted).

The district court agreed that Appellant did not need to identify a specific policymaker at the motion to dismiss stage, but must only "plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir.2016). The district court was satisfied with the Appellant's pleadings in this regard, and disregarded arguments from the City to the contrary.

## B. THE DISTRICT COURT ERRED IN DISMISSING TORRES'S *MONELL* CLAIMS.

### *1. Constitutional violations can be attributed to the City.*

The district court summarily dismissed Appellant's *Monell* claims, holding that, based on its conclusion that the Fort Worth Sound Ordinance is content-neutral and sufficiently balanced to allow for constitutional expression, and based on its conclusion that the Officers did not unconstitutionally apply the noise ordinance, no constitutional injury occurred. Because the district court's holding turns on its conclusions as to the constitutional injury, if those holdings were in error, then so is the district court's conclusion on the *Monell* claim. As noted above, the defendant Officers *did* inflict constitutional injury on Appellant by depriving him of his First Amendment rights to speech, by wrongful arrest, by wrongful citation, and the Sound Ordinance is unconstitutional both facially and as applied to Torres. The Appellant's Complaint, (ROA 9–53) satisfies these points.

### *2. The City is liable under Monell for inadequacy of training.*

The inadequacy of training of the City of Fort Worth in First Amendment concerns supports the City's liability under *Monell.* Deliberate indifference may be inferred in failure-to-train cases in a narrow range of circumstances when the violation of federal rights is a "highly predictable consequence of failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. Of County Commissioner of Bryan Cnty v. Brown,* 520 U.S. 397, 409-410 (1997). At

the motion to dismiss stage, entirely failing to train officers about their duties under the First Amendment will predictably and obviously result in recurring violations of citizens' First Amendment rights. *Hershey v. City of Bossier City*, 156 F.4th 555, 563 (5th Cir. 2025)(*pet. filed*) (J. Dennis, concurring in part and dissenting in part).

Multiple different officers of the Fort Worth Police Department encountered Torres during his preaching, having been led by their training to believe that they had a right, or even a duty, to prevent preachers from preaching the Gospel in public fora when someone claimed to be offended. Officer Wolfe indicated during the May 1, 2024 encounter that "when someone is offended by something, he has to take action because that is his job." (ROA 20). Officers Salazar, Galvan, and Tyler told Plaintiff on August 26, 2023 that "If anyone is offended and complains, they must issue a citation." (ROA 18). These facts show a complete lack of training that was the cause of Torres's injury. *Hershey*, *Id.*

Even more concerning is the Settlement Agreement which the City entered into with Appellant on March 23, 2023, which states that "The City further agrees to issue a roll call training to all officers concerning the City's noise ordinance, and to provide a copy of that training to Torres." (ROA 48). The City never provided Torres a copy of any training materials, and did not confirm that any training had been given. (ROA 33). Because the City was obligated to provide notification under the

terms of its agreement, and did not do so, it can be inferred that no training was provided.

The City's complete failure to train can also be inferred from the fact that the district court imposed a consent decree on the City on July 29, 2015, ordering the City not to enforce a policy or act in any other manner that would unlawfully ban or interfere with constitutionally protected expression of … third party speakers on public sidewalks in downtown Fort Worth, Texas during public events." (ROA 44). Yet the City, through its police officers, did exactly that, either intentionally or through the lack of training of its officers.

*3. A pattern or practice of constitutional violations supports liability of the City under Monell.*

The district court concluded that Torres had not plead facts to show that the City ratified a widespread custom of suppressing Christian street preaching "with deliberate indifference to the known or obvious consequences that constitutional violations would result." (ROA 400) (*citing Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 308 (5th Cir.2023)). The district court further intoned that it was appellant's burden to plausibly allege that the "pattern of events has occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir.2017), as revised (Mar. 31, 2017). (ROA 401). The court concluded

that appellant's "factual assertions manifest a lawful change in approach by the City's Officers from categorical bans on specified speech to protecting speech until it becomes unlawfully loud. And because of that change, [appellant]'s 'failure to train' allegations – failure to train the Officers, concerning the First Amendment rights of citizens in public forums – fall flat."

Here, the district court's conclusions improperly apply the legal standard for *Monell* claims, and mischaracterize Torres's pleadings. Accordingly, the district court erred when it dismissed Torres's *Monell* claims against the City of Fort Worth.

The *Monell* standard does not require demonstration of both failure to train and pattern or practice. Rather, evidence of a "single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights" is an exception to the historic requirement of demonstrating a pattern or practice for purposes of *Monell* liability. *Garza*, 922 F.3d at 637–38. Here, Torres has shown both a pattern or practice (which would generally be sufficient, on its own, to support *Monell* liability), but, alternatively, a single incident or handful of incidents with possibility of recurring situations.

Torres has pleaded not just a single incident, but rather *eleven separate incidents*, over a two-year period, that involve multiple officers in the Fort Worth Police Department, in which Torres and others were cited, arrested, or harassed for

exercising their First Amendment protected rights in public fora.[6] Just based on the eleven incidents, there are sufficiently numerous prior incidents to show that the "pattern of events has occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 396 (5th Cir.2017), as revised (Mar. 31, 2017). Following is a list of the incidents cited by Plaintiff:

| Date | Citizen | Location | Officers | Interaction |
|---|---|---|---|---|
| 10/2014 | David Grisham | General Worth Sq. | Rachel DeHoyos | Physical force and trespass warning with threats of arrest |
| 2017 | Terry Fish | Unknown | Unknown | citation |
| 6/18/2022 | Michael Torres | Public park | Officer Alfaro | Threats of arrest, citation |
| 6/25/2022 | Michael Torres | Political rally | Officers Holland and Carpenter | Arrest |
| 8/26/2023 | Michael Torres | Stockyards | Salazar, Galvan and Tyler | Citation and arrest |
| 12/2/2023 | Michael Torres | East Exchange Ave | Salazar | Threats of citation and arrest |
| 12/30/2023 | Michael Torres | Stockyards | Salazar, Cox & Rovell | Threats of arrest |
| 4/13/2024 | Michael Torres | Stockyards | Salazar, Cantu, Kim | Threats of arrest |
| 4/22/2024 | Michael Torres | Sundance Square | Unknown | Threats of criminal trespass |

[6] While this satisfies the *plausibility* standard, it is entirely foreseeable that additional events would be brought out on discovery.

| | | | | |
|---|---|---|---|---|
| 5/1/2024 | Michael Torres | Stockyards | Wolfe, Rodriguez | Harassment, citation |
| 8/3/2024 | Michael Torres | Stockyards | Salazar, Rodriguez, Wolfe | Arrest |

An official policy may take the form of a formal policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmakers or by an official to whom the lawmakers have delegated policymaking authority. *Burge v. St. Tammany Parish*, 336 F.3d 363, 369 (5th Cir. 2003). In addition, an official policy may also be in the form of "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that," in effect, "fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (*per curiam*). In such cases, the custom or practice has the "force of law." *See Connick v. Thompson*, 563 U.S. 51, 61 (2011). The multiplicity of events alleged above shows a decided pattern of First Amendment violations and restraint of First Amendment protected activity so as to constitute a "custom or policy" for purposes of satisfying *Monell.* Moreover, the actions of the Fort Worth Police Department to unlawfully interfere with First

Amendment protected speech continue, even as of the submission of this brief, concretely displaying the potential for recurrent situations.[7,8]

This case exhibits a sufficiently pervasive and extreme pattern or practice, which has resulted in the deprivation of First and Fourth Amendment rights on thirteen or more separate occasions, two prior occasions of which resulted in federal lawsuits against the City of Fort Worth. Nevertheless, the City police officers continue to act to commit acts of suppression and prior restraint against individuals who are preaching along public sidewalks and streetsides, and continue to employ the noise ordinance in a content-based manner. The mere facts – upon the totality of circumstances – depict an articulated policy of open hostility toward those engaging in protected First Amendment activity.

Moreover, the fact that Jeffrey Halstead (then chief of police) was a signatory to the Consent Order and Final Judgment in *Grisham*[9] and Fernando Cash, Assistant City Manager of the City of Fort Worth was a signatory to the March 23, 2023

---

[7] "Police officer warns street preachers they face citation 'if someone is offended' at LGBT pride rally." The Christian Post. July 1, 2026. https://www.christianpost.com/news/fort-worth-police-officer-warns-street-preachers-at-pride-event.html?utm_source=dlvr.it&utm_medium=facebook

[8] See also 2025 Youtube video posted by Unprofitable Servants Ministries, depicting the reaction of a Ft. Worth Police Officer to a Christian Preacher requesting to enter a Trinity Pride Parade. https://www.youtube.com/watch?v=R7pgKf1S61s

[9] Jeffrey Halstead consented to the Order by and through his agent, Assistant City Attorney Laetitia Coleman Brown. (ROA 43–45).

Settlement Agreement with Michael Torres in *Torres I*,[10] but yet the deprivation of Constitutional rights continued to occur indicating ratification on the part of the policymakers of the City of Fort Worth.

## V. The District Court failed to consider Torres's remaining claims.

### A. The Court erred in summarily dismissing claims for violation of Article I, § 8 of the Texas Constitution.

The district court summarily dismissed Appellant's claims for violation of the freedom of speech and freedom of religion clauses of the Texas Constitution. (ROA 402), noting that, under *Beaumont v. Bouillion*, 896 S.W.2d 143, 147 (Tex.1995), there is no implied private right of action for damages arising under the free speech and free assembly clauses of the Texas Constitution. However, the Appellant did not seek any damages under this section, but merely cited it as a basis for declaratory and injunctive relief. The Bill of Rights of the Texas Constitution specifically provides for an equitable action to declare a law void. *Tex. Med.Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 432 (Tex.2023).

The district court failed to undertake any substantive analysis of the Appellant's complaint concerning the Fort Worth Sound Ordinance under Art. I § 8, but simply dismissed these claims out of hand "for the same reasons set forth in Sections A and B, supra" (ROA 402).

---

[10] ROA 46.

In *Democracy Coalition v. City of Austin*, 141 S.W.3d 282, 295 (Tex.App.—Austin 2004, no pet.), the court held that dismissing a plaintiff's Free Speech action against was improper, because, under *Bouillion*, state constitutional claims seeking injunctive and declaratory relief should be determined by a jury when the evidence raises a fact issue as to those claims. *Id.* The pleadings in this case plausibly plead the elements necessary to support an injunction: (1) a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *See Texas Health Care Info Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 853 (Tex.App.—Austin 2002, no pet.). Similarly, declaratory judgments act may be used to clarify constitutional imperatives. *Frasier v. Yanes*, 9 S.W.3d 422, 427 (Tex.App – Austin 1999, no pet.). Because the appellant's complaint plausibly raised allegations satisfying the requirements of declaratory and injunctive relief under the Texas Constitution, it was error for the Court to dismiss these claims under Rule 12(b)(6).

B. THE COURT ERRED IN SUMMARILY DISMISSING CLAIMS FOR VIOLATION OF 42 U.S.C. § 1985.

Finally, the district court dismissed Appellant's claims that the individual defendant officers conspired to violate Appellant's civil rights in violation of 42 U.S.C. § 1985(3). (ROA 403). While it has been held that municipalities are incapable of entering into conspiracies (*see Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir.1998)), that conclusion relies upon the intracorporate

conspiracy doctrine. The United States Supreme Court has expressly refrained from answering the question of whether or not the intracorporate conspiracy doctrine applies to federal civil rights actions similar to this one. *See Watsky v. Williamson County, Texas*, 2024 WL 3433705, *4 (W.D.Tex. July 14, 2024). In light of the lack of on-point precedent for a Section 1983 claim and given the differences between antitrust and civil rights law, this Court should follow *Watsky* and decline to recognize a bar under the intracorporate conspiracy doctrine to Section 1983. Other decisions such as *Hill v. City of Houston*, 991 F.Supp.847 (S.D.Tex. 1998) have allowed § 1985 claims against an entity to be maintained at the 12(b)(6) stage on the basis that it is possible for multiple departments or entities within a single municipality to engage in conspiratorial behavior against a plaintiff. Consequently, the district court erred in dismissing Appellant's conspiracy claims as to the City of Fort Worth. *Baker v. Llano County*, 746 F.Supp.3d 429, 447 (W.D.Tex. 2024) (declining to dismiss conspiracy allegations under FED. R. CIV. P.12(b)(6)).

The Supreme Court has specifically reserved the question of whether a conspiracy motivated by invidiously discriminatory intent *other* than racial bias would be actionable" under 42 U.S.C. § 1985(3). *Griffin v. Breckenridge,* 403 U.S. 88, 102, n. 9 (1971). *See also McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919, 928 (5th Cir.1977). (noting that some lower courts have held discrimination against supporters of a political candidate and against women to be actionable.) *Id.*

(citations omitted); *and Eitel v. Holland*, 787 F.2d 995 (5th Cir.1986)(considering whether pro-se plaintiffs could be an identifiable class under § 1985(3)).

## VI. THE DISTRICT ERRED IN FAILING TO GRANT LEAVE TO AMEND THE COMPLAINT.

Appellant timely requested leave to Amend his pleadings, if the district court concluded that the factual allegations in plaintiff's claims were unsatisfactory. (ROA 254, 290-91, 371). Although the district court did find that Appellant's allegations were lacking, or conclusory in nature, the court failed to consider or grant Appellant's request to amend his pleadings.

Rule 15(a) requires a trial court "to grant leave to amend 'freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Lyn–Lea Travel Corp. v. Am. Airlines,* 283 F.3d 282, 286 (5th Cir.2002) (citation omitted). A district court must possess a "substantial reason" to deny a request for leave to amend, *id.,* but "leave to amend is by no means automatic." *Halbert v. City of Sherman,* 33 F.3d 526, 529 (5th Cir.1994) (citation omitted). Decisions concerning motions to amend are "entrusted to the sound discretion of the district court [.]" *Quintanilla v. Tex. Television, Inc.,* 139 F.3d 494, 499 (5th Cir.1998) (citation omitted). In deciding whether to grant leave to amend, the district court may consider a variety of factors in exercising its discretion, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of

allowance of the amendment, and futility of the amendment. *Dussouy v. Gulf Coast Inv. Corp.,*660 F.2d 594, 598 (5th Cir.1981).

Had the court granted leave to amend, Appellant would have had the opportunity to plead additional facts to resolve any areas that the district court found insufficient. *See Williams v. City of Denton, Texas*, No. 4:17-CV-00811, 2019 WL 438403, at *10-11 (E.D.Tex. Jan. 10, 2019). Because the district court failed to consider leave to amend, Appellant urges the Court of Appeals to reverse the opinion below.

## CONCLUSION

Michael Torres has a constitutionally protected right to preach the Gospel in public, which should not be stifled by the City of Fort Worth or by government actors. The underlying action sought redress for government action which deprived Torres of his clearly established constitutional rights, and the district court acted improvidently in dismissing this case. Accordingly, this Court should reverse the dismissal, and this case should be remanded for further proceedings.

Respectfully submitted,

HOGAN LAW FIRM, P.C.
6215 98th St
Lubbock, TX 79424
(806) 771-7900
(806) 771-7925 Fax

BY: *s/Robert Smead Hogan*
ROBERT SMEAD HOGAN
TEX. BAR NO. 00796767

ATTORNEY FOR APPELLEES

## CERTIFICATE OF SERVICE

I certify that on this the 2nd day of July, 2026, the foregoing Brief was filed electronically with the Court's ECF system and served thereby upon opposing counsel.

*s/Robert Smead Hogan*
ROBERT SMEAD HOGAN

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because this brief contains **12,991** words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced serif typeface using Microsoft® Word for Mac, Version 16.104.1 in 14-point Times New Roman font.

*s/Robert Smead Hogan*
ROBERT SMEAD HOGAN